United States District Court
Southern District of Texas
**ENTERED**
May 03, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| PRODUCE PAY, INC., § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | |
| § | |
| FRESH ORGANIC VEGETABLE, INC. § | |
| a/k/a FRESH ORGANIC VEGETABLES, § | CIVIL ACTION NO. 7:21-cv-00402 |
| INC, URAQI S.A. DE C.V., JOSE § | |
| NICOLAS CAMACHO TORO, DIANA § | |
| CONTRERAS TELLO, PAOLA § | |
| ALMAZAN, INVERORGANIC § | |
| PRODUCE S.A.P.I. DE C.V. § | |
| § | |
| Defendants. § | |

## ORDER AND OPINION

The Court now considers "Plaintiff's Motion for Entry of Default Judgment and Incorporated Memorandum of Law." Defendants are in default,[1] so Plaintiff's motion is unopposed.[2] After considering the motion, record, and relevant authorities, the Court **GRANTS** Plaintiff's motion and **AWARDS** judgment in favor of Plaintiff.

### I. BACKGROUND AND PROCEDURAL HISTORY

This is a Perishable Agriculture Commodities Act (PACA) case. Plaintiff Produce Pay, Inc. commenced this case on October 15, 2021, alleging that it entered into a prepayment agreement under which Plaintiff agreed to prepay Defendants Inverorganic Produce S.A.P.I. de C.V. ("Inverorganic") and Uraqi S.A. de C.V. ("Uraqi") not less than $300,000.00 for produce that

---

[1] Dkt. No. 26.
[2] *See* LR7.4.

would be delivered/tendered to Plaintiff approved distributors at a later date.[3] In exchange for the prepayments, Inverorganic and Uraqi agreed to sell Plaintiff not less than 414,202 cases of produce with an estimated market value of $4,593,997.00.[4] The complaint alleges that the owners of Inverorganic and Uraqi utilized Defendant "Fresh Organic Vegetable, Inc. ("Fresh Organic"), an undisclosed and unapproved entity, to receive, distribute and otherwise sale produce in the U.S. belonging to Plaintiff without payment to Plaintiff.[5]

Originally Plaintiff also included claims against 1329729 Ontario, Inc. t/a Westmoreland Sales. However, Plaintiff voluntarily dismissed those claims on January 4, 2022.[6] As to the remaining Defendants, Plaintiff alleges the following claims: Count I against Fresh Organic for failure to promptly pay; Count II against Inverorganic and Uraqi for Breach of Contract; Count III against Jose Nicholas Camacho Toro ("Toro"), Diana Contreras Tello ("Tello"), and Paola Almazan ("Almazan") for breach of fiduciary duty, Count IV against all Defendants for breach of express or implied duty; Count V against all Defendants for breach of good faith and fair dealing under PACA; Count VI against all Defendants for conversion; Count VII against all Defendants for unjust enrichment; Count VIII against Toro, Tello, and Almazan for intentional interference with contract; Count IX against Inverorganic for alter ego, single enterprise liability; Count X against Uraqi for alter ego, single enterprise liability; Count XI against Fresh Organic for alter ego, single enterprise liability; Count XII against all Defendants for conspiracy to defraud; Count XIII against all Defendants for aiding and abetting; and Count XIV against Inverorganic, Uraqi, and Fresh Organic for accounting and turnover.

---

[3] Dkt. No. 1 at 13.
[4] *Id*. at 14.
[5] *Id.*
[6] Dkt. No. 17.

Defendants Tello and Almazan have not been served and default has not been entered against these parties.[7] Defendant Toro executed waivers of the service of summons as to himself,[8] Inverorganic,[9] Uraqi,[10] and Fresh Organic,[11] but none has timely appeared or answered Plaintiff's complaint.[12] The Court accordingly ordered the Clerk of the Court to enter the clerk's entry of default under Federal Rule of Civil Procedure 55(a) against these Defendants.[13] In the instant motion, Plaintiff seeks entry of default judgment against the defaulting Defendants.[14] The Court now turns to the analysis.

## II. DISCUSSION

### a. Legal Standard

Obtaining a default judgment is a three-step process: "(1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment."[15] Once entry of default is made, "plaintiff may apply for a judgment based on such default. This is a *default judgment*."[16] Defendants have defaulted by failing to answer or otherwise appear in this case and the clerk has already entered default against them.[17] The only remaining question is whether the third step, entry of default judgment, is appropriate.

Federal Rule of Civil Procedure 55(b) authorizes entry of default judgment with court approval, which is not lightly granted. Default judgments are a disfavored and drastic remedy,

---

[7] Dkt. No. 26.
[8] Dkt. No. 9.
[9] Dkt. No. 10.
[10] Dkt. No. 13.
[11] Dkt. No. 11.
[12] Dkt. Nos. 10 & 11.
[13] Dkt. Nos. 25 & 26.
[14] Dkt. No. 29.
[15] *Bieler v. HP Debt Exch., LLC*, No. 3:13-CV-01609, 2013 WL 3283722, at *2 (N.D. Tex. June 28, 2013) (citing *N.Y. Life Ins. Co. v. Brown,* 84 F.3d 137, 141 (5th Cir. 1996)).
[16] *N.Y. Life Ins. Co.*, 84 F.3d at 141.
[17] Dkt. Nos. 13–14.

resorted to only in extreme situations such as an unresponsive party.[18] The Court will not grant default judgment automatically or as a matter of right, even if a defendant is in default.[19] Whether to grant default judgment is left to the sound discretion of the district court.[20] Adjudicating the propriety of default judgment is itself a three-step process.

First, the Court must determine whether the plaintiff's claims are well-pled and substantively meritorious.[21] After all, a defendant's failure to answer or otherwise defend does not mean the particular legal claims levied are valid and merit judgment against the defendant.[22] When analyzing the merits of claims, the Court may assume the truth of all well-pled allegations in the plaintiff's complaint because all defaulting defendants functionally admit well-pled allegations of fact.[23] But the Court will not hold the defendants to admit facts that are not well-pled or to admit conclusions of law.[24]

Second, if the plaintiff states a well-pled claim for relief, the Court examines six factors to determine whether to grant default judgment:

> whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion.[25]

Third, if the plaintiff's claims are meritorious and default judgment appears appropriate, the Court must determine whether the requested relief is proper. Specifically, default judgment

---

[18] *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989).
[19] *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996).
[20] *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).
[21] *See Wooten v. McDonald Transit Assocs.*, 788 F.3d 490, 498 (5th Cir. 2015).
[22] *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).
[23] *Id.*; *see Frame v. S-H, Inc.*, 967 F.2d 194, 205 (5th Cir. 1992) ("Unlike questions of actual damage, which must be proved in a default situation, conduct on which liability is based may be taken as true as a consequence of the default.").
[24] *Nishimatsu Constr. Co.*, 515 F.2d at 1206.
[25] *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

"must not differ in kind from, or exceed in amount, what is demanded in the pleadings."[26] The Court will determine how to calculate damages. The general rule is "unliquidated damages normally are not awarded without an evidentiary hearing" but the exception is when "the amount claimed is a liquidated sum or one capable of mathematical calculation."[27] When this exception applies, there is no need for an evidentiary hearing and the Court can enter default judgment on the papers.

### b. Analysis

#### 1. Whether Plaintiff's Claims are Substantively Meritorious

All of Plaintiff's claims in its complaint seek the same recovery of $318,693.00 plus prejudgment interest, applicable late fees, and all costs of collection, including attorneys' fees, incurred in this action.[28] Because Plaintiff's motion requests a sum certain "current aggregate amount of $352,620.36, which includes principal, distribution fees, interest charges, and late fees,"[29] the Court only needs to find that one of Plaintiff's counts as to each Defendant to be substantively meritorious in order to grant the motion for default judgment. Thus, the Court considers Count IV: PACA Violation (Unfair Trade Practice): Breach of Express or Implied Duty 7 U.S.C. § 499b(4) against all Defendants.[30]

PACA was enacted to promote fair dealing in the sale of fruits and vegetables.[31] Under PACA, it is a violation of federal law for a dealer of perishable goods "to fail, without reasonable

---

[26] FED. R. CIV. P. 54(c); *see also Ditech Fin., L.L.C. v. Naumann*, 742 F. App'x 810, 813 (5th Cir. 2018) (holding that rendering relief in a default judgment differs from other kinds of judgment).
[27] *Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410, 414 (5th Cir. 1998) (quoting *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)).
[28] Dkt. No. 1 at 16-40.
[29] Dkt. No. 29 at 2, 14.
[30] Dkt. No. 1 at 23.
[31] *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 413 (5th Cir. 2003).

cause, to perform any specific duty, express or implied, arising out of any undertaking in connection with any such transaction."[32]

Plaintiff asserts that Fresh Organic is a "dealer" of produce under PACA.[33] Further, Defendant Torro "is an officer, director, or shareholder of Fresh Organic and is identified on Fresh Organic's PACA license as the company's principal officer or owner."[34] Fresh Organic served as "the United States [] based selling arm or agent of, *inter alia*, Inverorganic and Uraqi."[35] Plaintiff alleges that Fresh Organic purchased or received bell peppers, a perishable agricultural commodity covered under PACA, from Inverorganic and Uraqi, in violation of the written agreement between Inverorganic, Uraqi, and Plaintiff.[36]

> Because of Torro's common ownership and Fresh Organic's relationship with both Inverorganic and Uraqu, Fresh Organic knew about: (i) Plaintiff's ownership of and interests in the Produce grown by Inverorganic and Uraqi, primarily involving fresh bell peppers; (ii) the Prepayment Agreement and the rights and obligations of the parties thereto, and; (iii) that its receipt and sale of Plaintiff's Produce was wrongful.[37]

Defendant Toro executed the "Pre-Season Prepayment Agreement" on behalf of Defendants Inverorganic and Uraqi.[38] The agreement involved the pre-payment for bell peppers to be delivered/tendered at a later date.[39] Plaintiff paid Inverorganic and Uraqi $300,000.00 and in exchange, Inverorganic and Uraqi agreed to sell Plaintiff not less than 414,202 cases of produce with an estimated market value of $4,593.997.00.[40] Under the prepayment agreement, Inverorganic and Uraqi were obligated to "disclose to [Plaintiff] the name of any and all

---

[32] 7 U.S.C. § 499b(4).
[33] Dkt. No. 29 at 6.
[34] *Id.*.
[35] *Id*.
[36] *Id.*
[37] *Id.* at 7.
[38] Dkt. No. 29-1 at 14.
[39] *Id.*
[40] *Id.*

distributors, marketers, agents, commission merchants, dealers, brokers and/or other persons it is considering engaging to distribute or sell any portion of the subject produce."[41] Pursuant to the agreement, Plaintiff approved multiple different distributors, marketers, agents, commission merchants, dealers, brokers and/or other persons as proper buyers or receivers of Plaintiff's produce.[42] However, "[u]nbeknownst to Plaintiff, Inverorganic and Uraqi utilized Fresh Organic to sell significant portions of Plaintiff's produce to third party purchasers, which paid Fresh Organic for Plaintiff's produce."[43] Plaintiff asserts that this constitutes a breach of an express or implied duty in violation of PACA.[44]

With respect to Toro's individual liability, the Fifth Circuit established that PACA liability extends to an agricultural business's controller.[45] Plaintiff asserts that Inverorganic is a Mexican Corporation owned and operated, in whole or in part, by Defendant Toro. Fresh Organic is a Texas corporation owned in whole or in part by Defendnat Toro.[46] Defendant Toro is listed as the President of Inverorganic, the "Administrator Unico" of Uraqi, and the principal officer or owner of Fresh Organic.[47] These allegations are sufficient to implicate Defendant Toro's individual libiality to Plaintiff for violating PACA.

The Court therefore finds that Plaintiff's claim is substantively meritorious. The Court now turns to whether default judgment is proper.

---

[41] *Id.* at 18.
[42] Dkt. No. 29 at 11.
[43] *Id.* at 8.
[44] *Id.*
[45] *E.g.*, *Iscavo Avocados USA, L.L.C. v. Pryor*, 953 F.3d 316, 318–19 (5th Cir. 2020); *Ruby Robinson Co. v. Herr*, 453 F. App'x 463, 465–66 (5th Cir. 2011) (per curiam).
[46] Dkt. No. 29 at 7.
[47] *Id.*

### 2. *Whether Default Judgment is Proper*

Because Plaintiff's process server served Defendants with process directly upon Jose Nicholas Camacho Toro in his individual capacity[48] and in his capacity as an officer of Inverorganic,[49] Uraqi,[50] and Fresh Organic,[51] and because the clerk's entry of default was mailed to Defendants,[52] Defendants' default does not appear caused by any good faith mistake or excusable neglect. Accordingly, the Court finds that there is no undue harshness of a default judgment, no undue prejudice to Defendants, and that the Court would not think itself obliged to set aside a default judgment upon either Defendants' appearance or motion.[53] The Court holds that entry of default judgment is proper. The Court turns finally to the measure of appropriate relief.

### 3. *Appropriate Relief*

Plaintiff prays for "$352,620.36, which includes the prepaid purchase amount of $300,000.00, distribution fees in the agreed amount of $53,705.00, prejudgment interest at the contract rate of 1.5% per month (18% APR) in the current amount of $43,348.78, late fees at contract rates in the amount of $98,560.00, and credits to Defendants for payments received by Plaintiff in the amount of $142,993.35."[54] Therefore, "Plaintiff respectfully requests that this Court enter Default Judgment against Defendants Inverorganic, Uraqi, Fresh Organic, and Toro, on a joint and several basis, in the current aggregate amount of $352,620.36, plus further interest and late fees until the judgment is paid in full."[55]

---

[48] Dkt. No. 9.
[49] Dkt. No. 10.
[50] Dkt. No. 13.
[51] Dkt. No. 11.
[52] Dkt. No. 26.
[53] *See supra* note 24.
[54] Dkt. No. 29 at 4.
[55] *Id.*

Plaintiff does not move for attorney fees in the instant motion. However, Plaintiff does "request[] that this Court confirm its contract right to recover reasonable attorneys' fees and costs and grant Plaintiff leave to file an application for an award of such fees and costs."[56] Additionally, Plaintiff asserts that it will "voluntarily dismiss the two unserved individual defendants, Diana Contreras Tello and Paola Almazan."[57] The Court **GRANTS** Plaintiff's request and **ORDERS** Plaintiff to file its motion for attorney's fees in accordance with Federal Rule of Civil Procedure 54(d)(2).

Accordingly, the Court holds that Plaintiff is entitled to judgment in the amount of $352,620.36, plus postjudgment interest under 28 U.S.C. § 1961, against Defendants Inverorganic Produce S.A.P.I. de C.V., Uraqi S.A. de C.V., Fresh Organic Vegetable, Inc., and Jose Nicolas Camacho Toro, jointly and severally. A final judgment will be entered following the filing and consideration of Plaintiff's motion for attorneys' fees as well as the dismissal of the unserved Defendants. The Court further **CANCELS** the status conference previously set for May 10, 2022.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 3rd day of May 2022.

_____
Micaela Alvarez
United States District Judge

---

[56] *Id.* at 5.
[57] Dkt. No. 29 at 2.